UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

                                **DECISION AND ORDER**

        v.                           6:13-CR-06006 EAW

KENYA BROWN,

              Defendant,

JOHNNY BROWN,

              Claimant/Petitioner.

───────────────────────────────

## <u>INTRODUCTION</u>

Defendant Kenya Brown ("Defendant"), along with his brother Shawnta Brown, was charged by the United States of America ("the government") via criminal complaint filed on March 13, 2012, with drug trafficking and firearms offenses.  (Dkt. 1).  An indictment was returned on January 8, 2013 (Dkt. 69), and a superseding indictment was returned on December 16, 2014 (Dkt. 174).  On June 14, 2016, Defendant and his brother each pled guilty to two counts of the superseding indictment, and pursuant to the terms of their plea agreements, they agreed not to contest the forfeiture of $303,355.00 seized by the government (the "seized currency").  (Dkt. 223; Dkt. 224).  A preliminary order of forfeiture was entered by the Court on June 20, 2016.  (Dkt. 229).  On July 25, 2016, Defendant's father, claimant Johnny Brown ("Claimant"), proceeding *pro se*, filed a petition with the Court to claim interest in the seized currency.  (Dkt. 236).

Presently before the Court is the government's motion for summary judgment (Dkt. 277), and Claimant's motion for court adjudication of his claim without a trial and/or more hearings (Dkt. 279).  For the reasons that follow, the government's motion for summary judgment is granted, and Claimant's motion for adjudication of his claim is denied as moot.

## BACKGROUND

### I.    Criminal Action

The superseding indictment charged Defendant and his brother with one count of a narcotics conspiracy, four counts of possession of firearms in furtherance of drug trafficking, five counts of possession with intent to distribute narcotics, and four counts of use of premises to manufacture, distribute, and use controlled substances; and it also contained three forfeiture provisions.  (Dkt. 174).  The first forfeiture provision in the superseding indictment alleged that pursuant to 21 U.S.C. §§ 853(a)(1) and 853(a)(2), "[u]pon conviction of any of the controlled substance offenses alleged in this Superseding Indictment, the defendants, SHAWNTA BROWN and KENYA BROWN, shall forfeit to the United States any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violation and any property used, and/or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violation, including, but not limited to the following: a. $303,355.00 United States Currency seized by law enforcement on March 13, 2012 from 11886 McNeeley Road, Red Creek, New York."  (Dkt. 174 at 10-11).

Defendant and Shawnta Brown each pleaded guilty to Count 1 of the superseding indictment that charged conspiracy to possess with intent to distribute, and to distribute,

five kilograms or more of cocaine and 280 grams or more of cocaine base in violation of
21 U.S.C. § 846, and to Count 2 of the superseding indictment that charged possession of
firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).
(Dkt. 223; Dkt. 224).  The Court sentenced each of them to an aggregate prison sentence
of 248 months and a five-year term of supervised release.  (Dkt. 258; Dkt. 263).

Defendant admitted to the first forfeiture allegation of the superseding indictment
as part of his plea agreement (Dkt. 224 at ¶ 2), and agreed not to contest the forfeiture of
the currency at issue (*id*. at ¶ 26 ("As a condition of the plea, the defendant agrees not to
contest any forfeiture or abandonment proceeding that may be brought by the United States
and agrees to immediately criminally forfeit all of the defendant's right, title and interest
to any and all property which are subject to forfeiture pursuant to Title 21, United States
Code, Sections 853(a)(1) and (a)(2), which are in the possession and control of defendant
or the defendant's nominees.  That property includes: (a) CURRENCY: (i) The sum of
$303,355.00 United States currency seized on or about March 13, 2012, and presently
being held as evidence by the government.  The defendant further agrees that this amount
is properly forfeitable pursuant to Title 21, United States Code, Sections 853(a)(1) and
(a)(2), as the $303.355.00 is proceeds of the defendant's and Shawnta Brown's illegal
activities and was used or intended to be used in their illegal activities and waives any other
rights the defendant may possess to contest that forfeiture.")).  Similarly, Shawnta Brown
agreed not to contest the forfeiture of the $303,355.00 at issue. (Dkt. 223 at ¶ 25 ("As a
condition of the plea, the defendant agrees not to contest any forfeiture or abandonment
proceeding that may be brought by the United States and agrees to immediately forfeit all

- 3 -

of the defendant's right, title, and interest to any and all property which includes: (a)
CURRENCY: (i) The sum of $303,355.00 United States currency seized on or about March
13, 2012, and presently being held as evidence by the government.")).

On June 20, 2016, the court entered a preliminary order of forfeiture.  (Dkt. 229).
Pursuant to the preliminary order of forfeiture, the Court found that based upon
Defendant's conviction and his admission to the forfeiture allegation in the superseding
indictment, the government had established the requisite nexus between the property and
the offense committed and that the seized currency was subject to forfeiture.  (Dkt. 229 at
1).  The preliminary order of forfeiture served as a judgment in favor of the government
regarding Defendant's right, title, and interest in the property.  (*Id.* at 2).  The preliminary
order of forfeiture further provided that any person other than Defendant claiming a legal
interest in the forfeited property was required to file a petition within 30 days.  (*Id.* at 3).

## II.   **Procedural Background**

On July 25, 2016, Claimant filed his petition to claim interest in the seized currency.
(Dkt. 236).  In it, Claimant submitted an affidavit of ownership indicating that he resides
at 11886 McNeeley Road in Red Creek, New York, the premises where the seized currency
was located.  (*Id.* at ¶¶ 1, 2).  He denies that any of the seized currency was derived from
proceeds of illegal activity and contends instead that the currency was accumulated from
Social Security payments, legitimate employment, savings, property sales, settlement
proceeds, retirement payments, and gifts.  (*Id.* at ¶¶ 5-6).

On January 12, 2017, the government filed a motion to permit discovery (Dkt. 267),
which was allowed by the Court on January 30, 2017 (Dkt. 268).  The Court directed that

discovery be completed by June 1, 2017, and dispositive motions filed by August 1, 2017. (*Id.*). On July 31, 2017, Claimant filed the pending motion for resolution of his case (Dkt. 279) and on August 1, 2017, the government filed the pending motion for summary judgment (Dkt. 277). The government filed a response to Claimant's motion on August 10, 2017. (Dkt. 281). Claimant did not respond to the government's motion for summary judgment.

## DISCUSSION

### I.   Legal Standards

Forfeitures such as the one before the Court are principally governed by Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853.

Section 853 provides the framework for the process of permitting a third party to assert an interest in forfeited property in an ancillary proceeding. Specifically, following entry of a preliminary forfeiture order, a third party is entitled to petition the court for adjudication of the validity of his legal interest in the seized property. 21 U.S.C. § 853(n)(2); *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015). To succeed on the petition, the petitioner must establish a legal interest in the property, providing the petitioner standing, and "entitlement to relief on the merits by establishing, through a preponderance of the evidence, [a] superior claim[] to the property under § 853(n)(6)." *Watts*, 786 F.3d at 160 (citing 21 U.S.C. § 853(n)(6)).

Under § 853(n)(6) the petitioner must demonstrate the application of one of two prongs by a preponderance of the evidence. Specifically, either:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6).  In addition, pursuant to the relation-back provision in § 853(c), "an interest in forfeited property is superior to the Government's interest only if it arose before the Government's interest vested."  *United States v. Sharma*, No. 18 CRIM. 340 (LGS), 2021 WL 861353, at *5 (S.D.N.Y. Mar. 8, 2021) ("Under the 'relation-back' doctrine of § 853(c), the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value)." (quoting *United States v. Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018)).

Federal Rule of Criminal Procedure 32.2 outlines the procedural framework for ancillary proceedings and the entry of a final order of forfeiture.  Fed. R. Crim. P. 32.2.  Pursuant to this rule, if a third party files a petition asserting an interest in property subject to forfeiture, an ancillary proceeding is conducted.  Fed. R. Crim. P. 32.2(c).  In such a proceeding, the court can allow the parties to conduct discovery and at the close of discovery, without conducting a hearing, a party may move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Fed. R. Crim. P. 32.2(c)(1)(B); *United States v. Tucker*, No. 16-CR-91 (PKC), 2020 WL 6891517, at *4 (S.D.N.Y. Nov. 24, 2020)

("Only after some discovery has taken place may a party move for summary judgment; at that point the petitioner would be required to produce evidence supporting a prima facie case of entitlement, but not before. . . . If the petition is not resolved through motion practice, it is to be adjudicated through a hearing." (internal citations, quotations and emphasis omitted)).

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*,

781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).   Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654 F.3d at 358.   Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Local Rule 56(a)(2) further provides that "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."  L. R. Civ. P. 56(a)(2) (emphasis added).   Although a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001), a district court has discretion to deem facts admitted for lack of compliance with its local rules, *see N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (holding it within district court's discretion to deem moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations" contrary to the district's local rules); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (because plaintiff failed to respond to defendant's statement of material facts submitted in accordance with local rules, "the material facts contained in his statement are deemed to be admitted as a matter of law").

## II.    <u>The Government is Entitled to Summary Judgment</u>

The Court finds that the government has come forward with evidence[1] establishing

that there are no genuine issues of material fact as to whether a reasonable fact finder could

conclude that the forfeiture is invalid and Claimant has a legally cognizable interest in the

seized currency that is superior to that of Defendant.  Because Claimant has not responded

to the motion for summary judgment, "the Court may, consistent with the Federal Rules of

Civil Procedure and the Local Rules for this district, assume the truth of [the moving

party's] factual assertions, and proceed to determine whether, based upon those facts,

summary judgment . . . is warranted."  *Strong v. Gorman*, 310 F. Supp. 3d 380, 382

(W.D.N.Y. 2018).  Here, in light of the evidence discussed below, the Court concludes that

it is.

---

[1]    Most of the evidence relied upon by the government is not self-authenticating, and the government makes no attempt to establish the authenticity of the evidence (simply submitting a declaration of government counsel which establishes that the exhibits were exchanged during discovery).  (*See* Dkt. 277-2).  While this may not be the most prudent course of action for a moving party on a summary judgment motion, in this case the Claimant has not submitted a response and therefore has not objected to the authenticity of any of the evidence relied upon by the government.  Accordingly, the Court will consider the evidence submitted by the government in support of its summary judgment motion. *See H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir. 1991) (observing that parties are not required to authenticate documents at summary judgment stage where no challenge to authenticity raised); *Haughton v. Town of Cromwell*, No. 3:14-CV-1974 (VLB), 2017 WL 2873047, at *3 (D. Conn. July 5, 2017) (on summary judgment motion, court may exercise its discretion to consider documents that have not been properly authenticated if no objection has been raised, but it is not required to do so), *aff'd*, 735 F. App'x 27 (2d Cir. 2018).

A.      Items Seized During Search

Notwithstanding Claimant's deposition testimony that Defendant and his brother did not keep belongings at his home or visit there, during the execution of a search warrant at Claimant's residence, multiple personal papers and belongings of Defendant and his brother were located, including a birth certificate for Defendant, and mail addressed to Defendant and/or his brother from several banks, a tax collector, the Social Security Administration, and an insurance agency. (Dkt. 277-7 at 14-43).   Nine firearms and ammunition were seized from Claimant's residence, which by pleading guilty to Count 2 of the superseding indictment, Defendant admitted he possessed in connection with his drug trafficking activities.   (Dkt. 223 at ¶ 5(c); Dkt. 224 at ¶ 5(c)).   Further, a narcotics detection K-9 was utilized during the search of Claimant's residence, and the dog alerted positively for narcotics in the master bedroom of the home.   (Dkt. 277-6 at 100-01). Finally, cocaine and drug paraphernalia were located at Claimant's residence (*id.*), allowing for a reasonable inference that the seized currency was related to drug activity at the premises.

The government also asks the Court to consider the denominations and packaging of the seized currency.   Specifically, over half of the seized currency was in $20 dollar bills, and the money was bundled and secured with different color rubber bands.   (Dkt. 277-6 at 125).   *See United States v. $32,507.00 in U.S. Currency*, No. 14 CIV. 5118 CM, 2014 WL 4626005, at *2 (S.D.N.Y. Sept. 16, 2014) (noting that "currency, overwhelmingly composed of smaller bills . . . wrapped in individual bundles in rubber bands . . . are common when transporting drug money, and courts have relied on them as

evidence of a connection to the drug trade").  This packaging is consistent with proceeds of illegal activity.  Thus, the Court concludes that the evidentiary proof submitted by the government supports a conclusion that the currency constituted proceeds from Defendant's drug trafficking activities.

### B.   Deposition Testimony

While Claimant and his family members offered testimony at their depositions that the currency belonged to Claimant and was derived from outside sources, the Court's careful review of this testimony leads to the inescapable finding that no reasonable juror could reach such a conclusion.

At his deposition, Claimant testified that in 2012, he was not employed but received monthly Social Security payments in the amount of $1,600, disability payments of $600, and a retirement pension of $230.  (Dkt. 277-9 at 32-33).  Claimant testified that the seized currency was wrapped in bubble wrap and rubber bands and located in two safes in his bedroom.  (*Id* at 46-47).  Claimant testified that his daughter Katrina Brown gave him approximately $25,000 in cash, but he did not track exactly how much or keep the money received from her separate from his other money.  (*Id.* at 62-64).  He further testified that his daughter Angelette Brown gave him cash payments that totaled $10,000, but like the money received from Katrina Brown, he did not record exactly how much Angelette Brown gave him or keep those funds separate from his other money.  (*Id.* at 64-66).  He also testified that his grandson gave him several thousand dollars.  (*Id.* at 66).  Claimant testified that Defendant and his brother did not have personal property at his residence and would not visit, sleep at, or leave belongings there other than to infrequently stop by when going

fishing. (*Id.* at 73, 74). He contends that the documents in his home bearing the names of Defendant and his brother were planted by the police. (*Id.* at 72, 76).

Katrina Brown testified that she gave Claimant cash payments for approximately seven to eight years prior to 2012, but she did not document those payments. (Dkt. 277-10 at 17, 20). She stated that the payments varied between three and five thousand dollars. (*Id.* at 19, 27). During some or all of that time frame, Katrina Brown received Section 8 housing assistance and food stamps. (*Id.* at 32, 33, 36).

Shaquan Armstrong, Claimant's grandson, testified that he spoke to Defendant and his brother and visited them in jail after they were arrested. (*Id.* at 52). Shaquan Armstrong did not recall having conversations with Shawnta Brown about the transfer of properties, but believes that at least four properties were transferred from Shawnta Brown to him around the time of Shawnta Brown's arrest. (*Id.* at 53-54). Shaquan Armstrong was unsure if he paid anything for the properties. (*Id.* at 54). Shaquan Armstrong was also unsure if he was employed in 2011 and did not keep track of money given by him to Claimant, but believes it to have been approximately $2,500. (*Id.* at 57, 65).

Brenda Snow, a good friend of Claimant's and with whom he shares a daughter, testified that she made monthly cash payments of approximately $500 to $800 to Claimant from 2000 to 2012. (Dkt. 277-11 at 19, 25, 27). Brenda Snow also testified that she purchased a residence from Claimant in 2005 for around $25,000. (*Id.* at 38, 41). Brenda Snow acknowledged that she filed for bankruptcy in 2011, largely arising from student loan debt. (*Id.* at 31, 33).

Angelette Brown is the mother of Shaquan Armstrong and daughter of Claimant. (Dkt. 277-12 at 10). Angelette Brown testified that she was unable to recall whether she had a bank account, her sources of income, or how much rent she paid between 2010 and 2012. (*Id.* at 15, 17, 21). She estimated that she gave Claimant close to $10,000 over the years. (*Id.* at 22).

### C.    Calls from Jail

The government cites to transcripts of multiple telephone calls that Shawnta Brown made from jail between March 9, 2012 and April 4, 2012. (Dkt. 277-5 at 15-86; Dkt. 277-6 at 1-58). The Court has reviewed the transcripts of the calls and concludes that a reasonable inference can be drawn that during the calls, defendant Shawnta Brown was referring to the seized currency and attempting to arrange for it to be removed from Claimant's residence before it was seized.

In sum, the Court has considered the aforementioned evidence and concludes that Claimant lacks a legal right, title, or interest in the seized currency that was superior to any legal right, title, or interest of Defendant at the time of the acts giving rise to its forfeiture. The evidence located at the premises at the time of the seizure supports the conclusion that Defendant and his brother maintained personal property at the premises and were engaged in drug activity at that location, and the Court finds that no reasonable juror could conclude otherwise. Defendant admitted as part of his plea that the currency was proceeds of his and his brother's illegal activities. Furthermore, Defendant and his brother admitted in their pleas that the guns located at Claimant's residence belonged to them and were possessed for purposes of drug trafficking, further supporting the conclusion that the seized

currency was connected to their drug trafficking crimes.  In addition, the denominations and packaging of the seized currency is consistent with cash used in furtherance of illegal activity.  The contradictions and inconsistencies in the deposition testimony, coupled with the implausibility of that testimony, do not lead to a different conclusion as a summary judgment motion cannot be defeated by "wholly implausible claims or bald assertions that are unsupported by evidence."  *See, e.g.*, *Laber v. Long View R.V., Inc.*, 454 F. Supp. 3d 158, 168 (D. Conn. 2020) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) and *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986)), *appeal withdrawn*, No. 20-1490, 2020 WL 4493225 (2d Cir. July 30, 2020).  In fact, Claimant's failure to oppose the motion or respond to the government's statement of undisputed facts, supports granting the government's motion for summary judgment as the record does not contain any genuine issues of material fact precluding such an award.

## <u>CONCLUSION</u>

The government's motion summary judgment (Dkt. 277) is granted and Claimant's motion for adjudication (Dkt. 279) is denied as moot.  It is hereby ORDERED, that the seized currency be and hereby is forfeited to the United States of America and is to be disposed of by United States Marshals Service according to law; and it is further ORDERED, that all claims and interests of any individual or entity in the seized currency are forever forfeited, closed, and barred.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  June 11, 2021
           Rochester, New York